UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WENDY L. KLIMEK,

                                    Plaintiff,

v.                                                          1:15-cv-00789
                                                            (DNH/TWD)
CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS             PETER M. MARGOLIUS, ESQ.
*Attorney for Plaintiff*
7 Howard Street
Catskill, New York 12414

HON. RICHARD S. HARTUNIAN                FERGUS J. KAISER, ESQ
United States Attorney for the          Special Assistant United States Attorney
Northern District of New York
*Attorney for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                STEPHEN P. CONTE, ESQ
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

        This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Wendy L. Klimek is 50 years old, with a birth date of September 2, 1965. (Administrative Transcript at 41.[1]) She graduated from high school, but has no further education. (T. at 42.) In the past, she has worked as a cashier, housekeeper, factory worker, postal worker, and most recently worked in respite care. (T. at 43, 46, 50-53.) Plaintiff alleges disability due to depression, anxiety, diabetes, and "personal" disorder. (T. at 310.)

Plaintiff applied for disability insurance benefits and supplemental security income ("SSI") on February 16, 2010, alleging disability as of January 16, 2010. [2] (T. at 306; Dkt. No. 10 at 1. [3]) The application was initially denied on April 7, 2010. (T. at 114-124.) On May 21, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (T. at 127.) The hearing was held on February 23, 2011, before ALJ Carl Stephan. (Dkt. No. 10 at 1.) On March 14, 2011, the ALJ issued a decision that Plaintiff was not disabled. (T. at 90, 93, 101.)

[1]  The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2]  Plaintiff's original application for Supplemental Security Income (SSI) alleges her disability began on February 1, 2008. (T. at 249.) However, the Field Office's February 16, 2010, disability report, and the ALJ's 2013 decision, state the onset of disability on January 16, 2010. (T. at 306, 13). The Court will use the January 16, 2010, date as the onset of disability date as neither party has objected to the 2010 disability onset date. Plaintiff applied for disability insurance benefits on February 5, 2010, and supplemental security income ("SSI") on February 16, 2010.

[3]  Page numbers in citations to the parties' briefs refer to the page number assigned by the Court's CM/ECF electronic filing system.

Plaintiff filed a request for review with the Appeals Council. (T. at 108.) The Appeals Council vacated the ALJ's decision and remanded the claim to the ALJ on August 30, 2012. (T. at 107-110.) A second hearing was held on October 29, 2013. (T. at 13,40.) On November 27, 2013, ALJ Stephan found Plaintiff not disabled. (T. 10.) Plaintiff's request to the Appeals Council for review was denied on April 24, 2015. (T. at 1.) Plaintiff timely commenced this action on June 26, 2015. (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits[4]

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential

---

[4] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, the Court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citations omitted); *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ found that Plaintiff had engaged in substantial gainful activity since January 16, 2010, the alleged onset date of disability and that she met the disability insured status requirements of the Social Security Act through September 30, 2013. (T. at 15-16.) At step two of the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments:

dysthymic disorder, post-traumatic stress disorder ("PTSD"), obsessive-compulsive personality traits, morbid obesity, right shoulder derangement, and degenerative disc disease. (T. at 16.)

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and determined Plaintiff had the residual functional capacity ("RFC") to perform light work[5] with restrictions. (T. at 16-18.)

At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work. (T. at 29.) At step five, the ALJ, considering Plaintiff's age, education, work experience, and RFC, determined that Plaintiff was not disabled. (T. at 29-30.) The ALJ determined Plaintiff's ability to perform all, or substantially all, of the requirements of light work was impeded by additional limitations. (T. at 30.) Therefore, the ALJ consulted vocational expert ("VE") Stephen Davis. (T. at 30, 39.) The VE testified that a person with Plaintiff's age, education, vocational background, and RFC could perform jobs which existed in significant numbers in the national economy. (T. at 30.) "After careful consideration of all of the evidence," the ALJ concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since February 5, 2010, the date the application was filed. *Id.*

## IV. THE PARTIES' CONTENTIONS

Plaintiff argues that the ALJ erred in evaluating Plaintiff's severity of symptoms, and thus the ALJ's decision was not supported by substantial evidence. (Dkt. No. 10 at 5-6.) Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 11.)

---

[5] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (SSA 1983). It requires a good deal of walking or standing, on and off, for a total of approximately six hours in an eight-hour workday, with sitting occurring intermittently at the time. *Id.* Or, light work may involve sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* The lifting requirement for the majority of most light jobs can be accomplished with occasional, rather than frequent, stooping. *Id.* at *6.

## V.     DISCUSSION

Plaintiff asserts that the Commissioner's analysis at step two was flawed because the ALJ's decision was not supported by substantial evidence in the record.  (Dkt. No. 10 at 5-6.) Plaintiff contends that the ALJ should have determined that her fibromyalgia and diabetes qualified as severe impairments.  *Id.*  Specifically, Plaintiff claims the ALJ was required to find her fibromyalgia as a severe impairment, or at the very least explain why it did not qualify, because the ALJ previously found Plaintiff's fibromyalgia to be severe in the March 14, 2011, decision.  *Id.*  The Commissioner argues the ALJ thoroughly reviewed all of Plaintiff's medical conditions, and that substantial evidence supports the severity determinations.  (Dkt. No. 11.) Upon review of the administrative record, Plaintiff's medical records for the relevant time period of January 16, 2010, through September 30, 2013, and Plaintiff's testimony, I find the Commissioner is correct.

### A.     Step Two Determination

The ALJ found Plaintiff had a number of severe impairments, but he did not find Plaintiff's diabetes and fibromyalgia severe.  (T. at 15-16, 19.)  The ALJ did, however, discuss Plaintiff's previous diagnoses of fibromyalgia and diabetes when determining her severe impairments.  (T. at 16, 19-20.)

At the second step of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921.  "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs."  *Id.* at §§ 404.1521(b), 416.921(b).  These include walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out instructions, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id.*; *see also Ianni v. Barnhart*, No. 02-74A, 2005 WL 3220220, at *11 (W.D.N.Y. Nov. 18, 2005); *Camacho v. Apfel*, No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).

The claimant bears the burden of presenting evidence to establish severity. 20 C.F.R. § 404.1512(c). The claimant must demonstrate the "impairment caused functional limitations that precluded her from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp. 2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality, which would have no more than a minimal effect on an individual's ability to work. *Perez*, 907 F. Supp. 2d at 271; SSR 85-28, 1985 WL 56858, at *2 (1985). An error in the ALJ's analysis at step two of the sequential evaluation is harmless where an ALJ found the claimant had other severe impairments and did not deny the claim based on the lack of a severe impairment alone. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *See* 42 U.S.C § 405(g). A court cannot reweigh evidence and substitute its views for those of the Commissioner. *Id.*; *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). Indeed, the court's task is not to determine "whether there is substantial evidence supporting the [claimant]'s view," but, rather, "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).

The ALJ's decision at step two is supported by substantial evidence and, for the following reasons, I find that Plaintiff has not met her burden regarding the alleged severity of her fibromyalgia and diabetes impairments.

### 1.     Fibromyalgia

First, Plaintiff claims the ALJ was required to find her fibromyalgia as a severe impairment, or at the very least explain why it did not qualify, because the ALJ found Plaintiff's fibromyalgia to be severe in the March 14, 2011, decision.  (Dkt. No. 10 at 5-6.)  The 2011 decision was vacated when the Appeals Council remanded the issue to the ALJ.  (T. at 107-10.)  Because the March 2011 decision was vacated, it cannot hold any weight on the ALJ's second decision.  *See* 20 C.F.R. § 404.901 (defining "vacated" as "to set aside a previous action.").  Accordingly, an issue that holds no bearing on the outcome of the decision need not be recited, so long as the record permits the reviewing court to understand the rationale of the ALJ's decision.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (citation omitted).  Therefore, the ALJ was not required to explain why Plaintiff's alleged fibromyalgia did not qualify as a severe impairment.

Plaintiff also contends the ALJ's decision is not supported by substantial evidence; however, Plaintiff does not present sufficient evidence to establish the ALJ erred when evaluating the severity of Plaintiff's impairments.  Plaintiff fails to cite to the record and offers no support for her contention that her alleged fibromyalgia significantly limited her ability to do basic work activities.  (Dkt. No. 10 at 5-6.)

In fact, during the October 29, 2013, hearing, when alleging she had fibromyalgia, Plaintiff only identified problems with her right shoulder and back.[6]  (T. at 54, 57, 62.)  Fibromyalgia is a medically determinable impairment when it is established by appropriate

---

[6] Plaintiff also testified that pain in her knees had improved.  (T. at 62.)

medical evidence. Fibromyalgia can be the basis for a finding of disability. SSR 12-2p, 2012 WL 3104869 (SSA July 25, 2012). A growing number of courts have recognized that fibromyalgia is a disabling impairment and that "there are no objective tests which can conclusively confirm the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (citing *Preston v. Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988)). The absence of swelling joints or other orthopedic and neurologic deficits "is no more indicative that the patients fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Id*. at 109 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Fibromyalgia is characterized as "a history of widespread pain . . . . Pain is considered widespread when patients have pain in the left and right side of the body, above and below the waist, and in the axial skeleton." *See* The Merck Manual, Figure 41-1 (Robert S. Porter, M.D. & Justin L. Kaplan, M.D. eds. (19th ed. 2011)).

After a thorough review of the record, Plaintiff had no medical history regarding fibromyalgia before October 11, 2011. (T. at 611, 617, 791, 930, 1004-05.) On October 4, 2011, Plaintiff visited Dr. Robert Semlear, M.D., complaining of abdominal pain. (T. at 930.) Dr. Semlear's assessment and plan focused on Plaintiff's colon, and did not mention anything regarding Plaintiff's back or shoulder pain. (T. at 931.) On her follow up visit on October 11, 2011, Plaintiff denied the existence of any pain; however, Plaintiff's medical history contained multiple additional diagnoses, including: lumbar spondylosis, degenerative disease lumbosacral spine disorder, and fibromyalgia, among others. (T. at 927.) After the October 11, 2011, office visit, Plaintiff continued to see Dr. Semlear; however, Plaintiff's progress notes do not mention

either shoulder or back problems until five months (and eight visits) later.[7] (T. at 903, 906, 909, 912, 915, 918, 921, 924.) When Plaintiff did mention shoulder pain during her March 26, 2012, office visit, she also discussed how she was taking care of an elderly patient, and lifting during her employment. (T. at 903.)

Plaintiff met with Dr. Pregont on April 30, 2012, and discussed her right shoulder pain. (T. at 1002.) Dr. Pregont ordered an MRI for Plaintiff on June 4, 2012. (T. at 1000-01.) According to the treatment notes of Dr. Pregont, Plaintiff had a follow up office visit with him for an MRI of her right shoulder on June 21, 2012. (T. at 997-98.) On exam of her right shoulder, Dr. Pregont found Plaintiff had no muscle asymmetry, no scapular winging, no atrophy, a full range of motion, and a "5/5" testing of all RTC groups. *Id.* On July 31, 2012, Plaintiff received an arthogram in her right shoulder. (T. at 992-93.)

Plaintiff did not consult Dr. Pregont for her right shoulder again until May 6, 2013. (T. at 1116-18.) On May 6, 2013, and the following visits, Dr. Pregont found that Plaintiff's shoulders had some decreased range of motion. (T. at 1105, 1108, 1111.) Dr. Pregont further determined that despite Plaintiff's subjective complaints of pain, she retained a supraspinatus strength [rotator cuff strength] of at least a "4+/5," an infraspinatus strength of "5/5" and a subscapularis strength of "5/5." *Id.* Plaintiff received an ultrasound of her right shoulder on September 30, 2013, which further indicated no tears of the supraspinatus, rotator cuff, or glenohumeral joint. (T. at 1105.) Dr. Pregont prescribed physical therapy treatment to help alleviate Plaintiff's pain. *Id.*

Furthermore, Plaintiff failed to support, or even assert, that her fibromyalgia significantly infringed upon her ability to do basic work activities. (T. at 54-62.) Plaintiff testified she

---

[7] Plaintiff complained of back issues in 2009 and 2010, however, the focus of her visits shifted to Plaintiff's shoulders in 2011. (T. at 611, 617, 791, 794.) On July 19, 2012, Plaintiff first complained of both back and shoulder pain. (T. at 894.)

stopped working because her elderly patient passed away, not due to her impairments. (T. at 53-54.) Based upon Plaintiff's testimony and medical records, the ALJ correctly characterized Plaintiff's fibromyalgia as not severe. (T. at 19-20.) The record suggests Plaintiff's fibromyalgia impairment would have a minimal effect on her ability to work, as she only specified pain in her back and right shoulder and she engaged in substantial gainful activity after the alleged onset date of disability, January 16, 2010, until the death of her patient, April 24, 2013. (T. 44-47, 54, 57-58, 306, 1083, 1086, 1123.)

Plaintiff also testified that she could dress herself, take care of her bathing and personal hygiene, make meals, do laundry, and go grocery shopping, despite her fibromyalgia. (T. at 59-60.) During the relevant period, Plaintiff worked at two separate jobs, totaling over 60 hours a week, thus demonstrating her fibromyalgia did not preclude her from engaging in any substantial gainful activity for one year or more. (T. at 16, 42-47.[8]) Thus, Plaintiff has failed to carry her burden at step two to provide evidence showing that her fibromyalgia was severe or caused functional limitations that precluded her from performing substantial gainful activity.

Although ALJ Stephan found Plaintiff's fibromyalgia to be not severe at his step two determination, it is clear that he considered Plaintiff's fibromyalgia and how it impacted Plaintiff's ability to perform basic work activities in his decision. (T. at 16, 19-20, 22-26.) The ALJ discussed Plaintiff's fibromyalgia symptoms, including her right shoulder and low back pain, throughout the decision, effectively demonstrating his consideration of the impairments in his analysis. (T. at 19-21.) The ALJ determined Plaintiff's impairments related to fibromyalgia were not severe because they did not cause more than minimal limitations in Plaintiff's ability to

---

[8] Additionally, Plaintiff failed to allege fibromyalgia as a condition that limited her ability to work on her disability application. (T. at 310.)

perform basic work activities.  (T. at 19-21, 53-54, 59-60.)  Thus, the ALJ's determination finding Plaintiff's fibromyalgia non-severe is well supported by the record.

### 2.  Diabetes

Plaintiff also claims that one hypoglycemic episode on July 3, 2013, contradicts the ALJ's findings that Plaintiff's diabetic condition did not have an adverse impact on her vocational base.  (Dkt. No. 10 at 6.)  However, Plaintiff does not present sufficient evidence to establish her diabetes as a severe impairment.  Plaintiff again fails to support her allegation that her impairment significantly limited her ability to do basic work activities.  *Id.* at 5-6.  Like Plaintiff's fibromyalgia, the medical evidence indicates Plaintiff's diabetes impairment would have only a minimal effect on her ability to work.

In his decision, the ALJ discussed Plaintiff's diabetes, as well as the possible limitations it may impose on Plaintiff's RFC.  (T. at 20, 22, 30.)  The ALJ addressed Plaintiff's singular episode due to her low blood sugar; however, the ALJ also noted that Plaintiff's diabetes was controlled by medication and she had not required any hospitalizations due to her diabetes.  (T. at 16, 19, 22, 791, 810, 899, 1092-93, 1095.)  In March 2013, Plaintiff's only diabetes treatment consisted of taking Lantus insulin daily.  (T. at 22, 982.)  Plaintiff's available medical records indicate she was initially diagnosed with type-two diabetes on February 2, 2009.  (T. at 643.)  Examining Dr. Semlear's medical records, Plaintiff's diabetes was consistently characterized as "controlled" with the one exception for the July 3, 2013, incident.  (T. at 607-643, 789-813, 821-30, 888-937, 1007-18, 1083-1103.)

Plaintiff had been diagnosed with diabetes for at least four years before her first and only reported hypoglycemic incident occurred.  (T. at 643, 1095.)  After the July 3, 2013, hypoglycemia incident, Plaintiff next visited Dr. Semlear on July 23, 2013, where Dr. Semlear

again characterized Plaintiff's diabetes as "controlled." (T. at 1092-93.) In addition, Plaintiff

testified that she worked through April 24, 2013, thereby engaging in substantial gainful activity.

(T. at 53-54, 1123.) Thus, Plaintiff's diabetes did not preclude her from engaging in any

substantial gainful activity for one year or more, both before and after the disability claim was

filed. (T. at 45-47, 53-54, 88, 1123.) While Plaintiff did require hospitalization for one instance

of hypoglycemia, one reported episode of hypoglycemia over a four year time span is not enough

to support Plaintiff's claim that her diabetes is severe. (T. at 1095-97.)

Based on the above, the Court finds the ALJ applied the proper legal standards when

determining the severity of Plaintiff's impairments, and the ALJ's decision is supported by

substantial evidence.

### 3.      Harmless Error

Plaintiff, in attacking the agency's determination, has the burden of demonstrating an

error is harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Any potential error in the

ALJ's step two analysis is harmless if the ALJ finds other severe impairments because Plaintiff's

claim was not denied based on the lack of a severe impairment alone. *See Stanton*, 370 F. App'x

at 233 n.1. Even if the ALJ had incorrectly characterized Plaintiff's diabetes and alleged

fibromyalgia as non-severe, the ALJ found other severe impairments. (T. at 16.)

An ALJ need not recite every piece of evidence that contributed to the decision, so long

as the record permits the reviewing court to comprehend the rationale of an ALJ's decision.

*Mongeur v. Heckler*, 722 F.2d 1033 (2d Cir. 1983); *see also Shinseki* 556 U.S. at 409 ("burden of

showing that an error is harmful normally falls on a party attacking the agency's determination");

*Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand unnecessary where "application of

the correct legal principles to the record could lead to only the same conclusion") (internal quotation marks and brackets omitted).

When "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating the ALJ is required to consider the "combined effect of all of [a plaintiff's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

The ALJ found other severe impairments while evaluating Plaintiff, including Plaintiff's degenerative disk disorder. (T. at 16.) Furthermore, Plaintiff's fibromyalgia and diabetes were addressed throughout a substantial portion of the ALJ's decision and these conditions were addressed when the ALJ determined Plaintiff's RFC. (T. at 16, 18-29.) The ALJ discussed Plaintiff's degenerative disk disorder in her upper and lower back, as well as Plaintiff's right shoulder pain. (T. at 19-20, 22, 24-25, 27-29.) As previously stated, Plaintiff's fibromyalgia symptoms were predominately located on her back and her right shoulder. (T. at 19, 54, 57, 62.) While not specifically citing Plaintiff's fibromyalgia throughout the decision, the ALJ discussed Plaintiff's shoulder and back impairments, including Plaintiff's limited range of motion for her right shoulder. (T. at 19-23, 25, 27.) Accordingly, the ALJ accounted for Plaintiff's fibromyalgia when determining her RFC.

The ALJ also considered Plaintiff's diabetes, specifically referencing Plaintiff's testimony about her diabetes and the symptoms associated with that condition. (T. at 19-20, 23, 63-64.) Plaintiff testified that her diabetes is not necessarily under control, as she becomes sweaty, and feels faint a few times a month when her blood sugar is low. (T. at 19, 63.)

Although the ALJ incorrectly stated "Plaintiff has never reported her symptoms to any physician and there are no hospital records substantiating her claims," this error is harmless as the ALJ continued through step five of the analysis and these issues were addressed when the ALJ determined Plaintiff's RFC.  (T. at 1095-97.)

Even if the ALJ erred in not finding fibromyalgia or diabetes severe, the Court finds the error was harmless.

### B.    Step Three: The Listed Impairments[9]

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 16, 1043-45, 1047-51.)  Specifically, the ALJ analyzed whether Plaintiff's impairments met listing: 12.04 (affective disorders); 12.06 (anxiety related disorders); and 12.09 (substance addiction disorders).  (T. at 16.)  Plaintiff's impairments do not meet the criteria of these listings because Plaintiff had only mild restrictions in activities of daily living.  (T. at 16, 1043-45.)  Plaintiff testified that she was capable of bathing, making meals, grocery shopping, vacuuming, and sweeping.  (T. at 59-60.)  Dr. Hartman was the examining psychiatric expert for Plaintiff, however, Dr. Satloff determined whether she satisfied the "paragraph B" criteria.  (T. at 1043-45, 1047-49.)  Dr. Satloff evaluated Plaintiff's medical evidence and, using Dr. Hartman's findings, found that Plaintiff did not satisfy the "paragraph B" criteria because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.  (T. at 1048.)  Therefore, the ALJ correctly determined that Plaintiff did not satisfy the "paragraph B" criteria.  (T. at 17, 24-25, 956-58, 1043-45, 1047-49, 1051.)

---

[9]  The parties did not brief any of the remaining steps, however, the Court nonetheless finds that the ALJ's decision was supported by substantial evidence and contained no errors of law.

### C. Opinion Evidence and the RFC Determination

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §§ 404.1546(c), 416.946(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at §§ 404.1545(a), 416.913(c). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430,

440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Based on the entire record, the ALJ found that Plaintiff had the RFC to:

> occasionally lift 20 pounds and frequently lift 10 pounds; sit for one-hour at a time and a total of eight hours in an eight-hour day; stand for one hour at a time and a total of three hours in an eight-hour day; walk one hour at a time and a total of two hours in an eight-hour day; occasionally climb stairs and ramps, stoop, crouch, balance, and kneel; never climb ladders or scaffolding, or crawl; occasionally reach overhead with her dominant right arm, and frequently reach in all other directions; tolerate occasional exposure to unprotected heights or moving mechanical parts; occasionally operate a motor vehicle; and occasionally tolerate exposure to extreme temperatures and humidity. Plaintiff was unable to tolerate exposure to vibrations.

(T. at 17-18.) She could understand, remember, and carry out simple instructions, and was occasionally capable of understanding, remembering, and carrying out complex instructions. (T. at 18.) She could make simple, work-related decisions and occasionally make more complex work-related decisions, occasionally interact with supervisors, coworkers, the public, and occasionally deal with changes in the work setting. *Id.* Plaintiff was capable of understanding, remembering, and carrying out simple and occasionally complex instructions. *Id.*

With regard to Plaintiff's right shoulder, Dr. Jose Corvalan, M.D., found Plaintiff had mild limitation with respect to the use of the right upper extremity, due to the pain in the right shoulder. (T. at 23-24, 967.) The ALJ gave considerable weight to Dr. Covalan's opinion, as it was consistent with the objective medical evidence in the record. (T. 24, 97, 983-84.) On examination, Dr. Corvalan performed a series of shoulder and back range of motion tests and found Plaintiff's right shoulder forward elevation was 110 degrees. (T. at 983.) Plaintiff's right

shoulder abduction was 110 degrees, while her right shoulder horizontal adduction was 20 degrees. *Id.* Plaintiff had a "5/5" strength in her proximal and distal muscles and had a full range of motion for her elbows, wrists, and hands. *Id.* Additionally, Dr. Corvalan found Plaintiff's thoracic and lumbar spines had a flexion and extension of 70 degrees. *Id.* Similarly, on September 30, 2013, Dr. Pregont, M.D., performed a series of shoulder abduction and back range of motion tests and found Plaintiff's active abduction to be 130 degrees, with a horizontal abduction of 20 degrees. (T. at 1105.) Plaintiff's right shoulder supraspinatus strength was characterized as a "4+/5" while her infraspinatus and subscapularis strength was characterized as a "5/5." *Id.* Dr. Pregont also found Plaintiff had a full range of motion for her back, elbows, wrists, and hands, with no radiating pain. *Id.*

The ALJ also considered the medical opinion of Dr. Louis Fuchs, M.D., who opined that Plaintiff can never reach overhead with the right, dominant upper extremity, and can frequently reach in all other directions with the right, dominant upper extremity. (T. 24-25, 1055-57.) The ALJ gave substantial weight to Dr. Fuchs' opinion as Dr. Fuchs is a board certified orthopedic surgeon, and he supported his opinion with direct reference to the objective medical evidence. (T. 25, 1062.) The RFC reflects the limits regarding Plaintiff's ability to reach overhead with her right arm. (T. at 22-23.)

Even though Plaintiff's fibromyalgia and diabetes were found not severe, the ALJ still considered any limits caused by these conditions in Plaintiff's RFC. Dr. Covalan diagnosed Plaintiff with right shoulder pain, low back pain, and diabetes mellitus. (T. at 23, 983.) While the ALJ found Plaintiff's diabetes not severe, Dr. Covalan's diagnosis was given considerable weight in the ALJ's decision. (T. at 24.) The ALJ noted Dr. Covalan's opinion was consistent with all of the medical evidence "taken as a whole," which includes Plaintiff's diabetes. (T. at

22-24.)  Furthermore, Plaintiff only identified problems with her right shoulder and back when alleging fibromyalgia.  (T. at 54, 57, 62.)  Both Dr. Covalan and Dr. Fuchs addressed Plaintiff's right shoulder and back problems in their opinions, with direct support from the objective evidence in the record.  (T. at 983-85, 1055-57, 1062-64.)  As Plaintiff's right shoulder and back problems were discussed throughout the ALJ's decision, it is clear the ALJ considered Plaintiff's fibromyalgia in the RFC analysis.  The ALJ determined Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, sit one hour at a time for a total of eight hours in an eight hour workday, walk one hour at a time for a total of two hours in an eight hour workday, and occasionally reach overhead with her right arm and frequently reach in all other directions.  (T. at 17-18.)  Therefore, Plaintiff's non-severe impairments were also considered in the RFC analysis.

On March 27, 2013, Plaintiff was examined by Dr. Brett Hartman, a psychiatric examiner.  (T. at 957.)  He opined that Plaintiff was able to follow and understand simple directions, perform simple tasks, and had mild difficulty maintaining attention and concentration.  (T. at 25, 957-58.)  Dr. Hartman additionally found Plaintiff was capable of maintaining a regular schedule, learning new tasks, performing complex tasks independently and making appropriate decisions.  *Id.*  The ALJ gave considerable weight to Dr. Hartman's opinion, since Dr. Hartman examined Plaintiff and his conclusions were consistent with his examination of Plaintiff.  (T. at 25, 958.)

In addition, Dr. Aaron Satloff, M.D., a non-examining psychiatric expert, opined that Plaintiff had mild functional limitations, but no limitations with respect to her ability to understand, remember, and carry out simple instructions.  (T. at 25-26, 1048.)  Dr. Satloff, a board certified psychiatrist, further determined Plaintiff had mild limitations with respect to her ability to make judgements on simple work related decisions, and had none to mild limitations

with respect to her ability to understand, remember, and carry out complex instructions. (T. at 1043-44.) Additionally, Dr. Satloff concluded Plaintiff had mild to moderate limitations with respect to her ability to make judgments on complex work-related decisions. *Id.*

Dr. M. Martin, a state agency reviewing psychiatric expert found Plaintiff did not have a severe psychiatric impairment. (T. at 672, 676.) The ALJ gave some weight to Dr. Martin's opinion noting Plaintiff's psychiatric diagnoses could reasonably impact her vocational base. (T. at 26.) The ALJ also considered the medical opinion of Plaintiff's treating therapist, Christie Wright, LCSW. (T. at 26-27.) Plaintiff testified that she worked as a home health provider and discontinued work due to the death of her client. (T. at 42, 45, 53-54.) Plaintiff's testimony directly contradicted Ms. Wright's opinion regarding Plaintiff's capacity to complete the mental requirements of substantial gainful work. (T. at 1080-81.)

Lastly, the ALJ evaluated the medical opinion Plaintiff's treating physician, Dr. Robert Semlear. (T. at 27-28.) Dr. Semlear found that Plaintiff has a total combined capacity of sitting, standing, and walking for seven hours in an eight hour day, however, Plaintiff testified she worked over 60 hours per week with no indication she found this difficult. (T. at 45-46, 821-26.) Dr. Semlear opined that Plaintiff had marked limitations with respect to her ability to interact appropriately with the public, mild limitations with respect to her ability to interact appropriately with supervisors, and moderate limitations with respect to her ability to interact appropriately with coworkers. (T. at 821-26, 828-29.) Dr. Semlear's conclusion with respect to Plaintiff's ability to interact appropriately with the public was contradicted by Plaintiff's own testimony when working part time as a cashier. (T. at 46-47.) As Plaintiff's own testimony and statements contradict Dr. Semlear's medical opinions, the ALJ did not err when giving little weight to Dr. Semlear's opinions.

Therefore, Plaintiff's RFC to perform a wide range of light work, with limitations, was supported by substantial evidence.

### D.    Credibility Evidence and the RFC Determination

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the credibility of the claimant. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 416.929; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier*, 606 F.3d at 50; 20 C.F.R. § 416.929(a)(3).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about her pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen v. Colvin*, No. 1:11-CV-829, 2014 WL 1289575, at *4 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . .

subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Id*. (citation omitted).

In this case, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statements regarding the severity of her symptoms and limitations. (T. at 20-21.) Engaging in a two-step analysis to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ determined the extent to which they limit Plaintiff's functioning. (T. at 18.) Under certain circumstances a subjective experience of pain may support a finding of disability. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)). This is not such a case. A claimant who alleges disability based on pain does not have to provide direct medical evidence confirming the extent of the pain, however there must be medical signs and laboratory findings that show that the claimant has a medical impairment which could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 1529(a); 42 U.S.C. § 423(d)(5)(A). Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings. *Snell*, 177 F.3d at 135 (citing *Donato v. Sec'y of HHS*, 721 F.2d 414, 418-19 (2d Cir. 1983)).

"A finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams, 859 F.2d at 260-61 (citation omitted). In this case, the ALJ compared Plaintiff's testimony with the medical evidence in the record and found Plaintiff's testimony not entirely credible. (T. at 20-29.) For example, Plaintiff's subjective complaints were contradicted by her ability to engage in substantial gainful work activity. (T. at 43-46, 53.) Plaintiff stated that she could complete daily activities including, dressing herself, taking care of her bathing and personal hygiene, making meals, doing laundry, and going grocery shopping, despite her impairments. (T. at 59-60.) Additionally, Plaintiff testified that she stopped working due to the death of her client, not her inability to perform her required duties. (T. at 45, 53.)

An ALJ can properly consider that the claimant's varied activities in determining that allegations of disabling limitations are not fully credible. *Poupore*, 566 F.3d at 307. Here, based upon the above, the ALJ did not err in his assessment of Plaintiff's credibility. The ALJ clearly considered Plaintiff's statements regarding her impairments and found her statements inconsistent with the medical evidence from the relevant time period. (T. at 20- 23.) Plaintiff testified that she was very limited with respect to her ability to sit, stand, walk, lift and carry; however, the medical evidence demonstrates that she has a full range of motion of the spine, upper and lower extremities, with the exception of a limited range of motion for her right shoulder. (T. at 58-59, 821-26, 828-29, 985-90, 1055-63.) Additionally, Plaintiff testified that her diabetes may not necessarily be under control, yet her primary care physician, Dr. Semlear, characterized Plaintiff's diabetes as "controlled" both before and less than one month after her singular hypoglycemic incident. (T. at 63, 889, 1092-93.) Plaintiff also testified that she could dress herself, bathe herself, do her own laundry, make her own meals, do her own grocery shopping, wash her dishes, and vacuum or sweep her house. (T. at 59-60.) Therefore, the ALJ properly set forth his reasons for finding Plaintiff's claims inconsistent with regard to the intensity, persistence, and limiting effects of her symptoms. (T. at 20-29.) Accordingly, the Court finds Plaintiff's RFC was based upon proper legal principles and was supported by substantial evidence.

### E. Steps Four and Five

At step four, the ALJ determined Plaintiff was unable to perform any of her past relevant work. (T. at 29.) After examining the record, the Court agrees and notes the ALJ properly performed the step four analysis.

At step five, if a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). The ALJ may apply the Medical-Vocational Guidelines (the "grids") or consult a vocational expert ("VE"). *See Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.

The VE may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00CV0556 (GLS), 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A VE's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (citation omitted). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the VE's testimony. *Colon*, 2004 WL 1144059, at *6. However, there must be "'substantial record evidence to support the assumption upon which the [VE] based his opinion.'" *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

According to the Regulations, "[w]ork exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). "Courts have generally held that what constitutes a "significant"

number is fairly minimal." *Fox v. Barnhart*, No. 6:02-CV-1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009) (collecting cases).

Here, the VE testified that given all of Plaintiff's impairments, a hypothetical person would be able to work as a table worker, a shipping and receiving weigher, and a lamination inspector. (T. at 30.) An ALJ may rely on a VE's testimony regarding a hypothetical as long as there is "substantial evidence in the record to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (citations and internal punctuation omitted). As the VE relied on Plaintiff's medical records and testimony, there is substantial evidence to support the assumptions underlying his opinion. (T. at 71-87.) Therefore, the Court determines the ALJ's decision was supported by substantial evidence and contained no errors of law.

After carefully reviewing the entire record and for the reasons stated, the Commissioner's denial of benefits applied the correct legal standards and was based upon substantial evidence. 20 C.F.R. §§ 404.1520(9), 416.920(9). Therefore, the Court recommends that the decision of the Commissioner be affirmed.

**WHEREFORE,** it is hereby

**RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**, Defendant's motion for judgement on the pleadings (Dkt. No. 11) be **GRANTED**, and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL</u>**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: July 21, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge